# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIC BOYINGTON, on behalf of himself and all others similarly situated, | ) ) ) | CASE NO. 3:14-CV-90 |
| | ) | JUDGE KIM R. GIBSON |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| PERCHERON FIELD SERVICES, LLC, | ) ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

This case arises out of Plaintiff Eric Boyington's employment by Defendant Percheron Field Services, LLC, as a Right of Way Agent. Boyington filed this case in this Court on May 7, 2014, alleging that Percheron improperly classified him and his co-workers as exempt employees under the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201-19, and the Pennsylvania Minimum Wage Act (PMWA), 43 Pa. Cons. Stat. §§ 333.101-15. (ECF No. 1 ¶ 1.) Boyington seeks damages for non-payment of overtime wages for himself and all others similarly situated. (*Id.*) Presently before the Court is Plaintiffs' Motion to Compel Production of Documents. (ECF No. 176.)

For the reasons that follow, Plaintiffs' Motion to Compel is **GRANTED IN PART** and **DENIED IN PART**. Outstanding also is Plaintiffs' Motion to Compel access to the rowAMPS database (ECF No. 164), which the Court reserved ruling on in its Order dated July 14, 2016 (ECF No. 174). For the reasons below, that Motion is **DENIED**.

## I.     Background[1]

An Initial Scheduling Order was entered in this case on August 4, 2014, which set February 15, 2015, as the deadline for fact discovery.  (ECF No. 26.)  On February 13, 2015, Plaintiff requested an extension of that discovery deadline.  (ECF No. 93.)  Already outstanding at that point were, among other things, Plaintiff's Motion for Protective Order (ECF No. 58), Plaintiff's Motion for Leave to File Second Amended Complaint (ECF No. 61), Defendant's Motion to Enforce Settlement Agreement (ECF No. 64), Defendant's Motion for Protective Order to Stay Discovery Pending Disposition of Motion to Enforce Settlement Agreement (ECF No. 80), and Plaintiff's Motion to Compel Discovery (ECF No. 83).  Each of these motions was—strenuously—opposed.

On February 17, 2015, the Court granted Plaintiff's request for an extension of time to complete discovery; the Court's Order stated that new discovery deadlines would be established in a Case Management Order which would accompany the resolution of the other pending motions.  (ECF No. 94.)  The Court issued opinions and orders addressing those pending motions on June 15 and 16, 2015 (*see* ECF Nos. 96-102), and issued an Amended Initial Scheduling Order on July 1, 2015 (ECF No. 107).  The Amended Initial Scheduling Order set December 15, 2015, as the new deadline for fact discovery.  (ECF No. 107.)

On October 14, 2015, counsel filed a Joint Motion for Entry of Amended Case Management Order.  (ECF No. 118.)  In this Joint Motion, the parties stated that they planned to participate in a mediation session on December 1, 2015, and proposed a stay of formal discovery

---

[1] Because the parties are familiar with the factual background of this case, only the facts relevant to the issues currently outstanding are included here.

until December 4, 2015, as well as a new deadline of March 18, 2016, for fact discovery if mediation proved unsuccessful. (*Id.*) The Court granted the Joint Motion on October 15, 2015. (ECF No. 120.)

Mediation did not resolve the case. (ECF No. 131.) And counsel jointly filed another motion requesting an extension of the case's deadlines on March 17, 2016, which the Court granted that same day. (ECF Nos. 139-40.) The Court's Order set July 20, 2016, as the new deadline for fact discovery, and June 20, 2016, as the deadline for Plaintiffs' Motion for Final Class Certification. (ECF No. 140.)

These extensions, too, proved insufficient. On June 17, 2016—three days before Plaintiffs' Motion for Final Class Certification was due—Plaintiffs filed an Omnibus Motion to Extend Discovery, for Protective Order, and to Compel Access to Database. (ECF No. 163.) Due to the extensive relief sought in Plaintiffs' Omnibus Motion, the Court held oral argument on the Omnibus Motion on July 14, 2016. (*See* ECF No. 173.) After oral argument, the Court issued an Order granting Plaintiffs' Omnibus Motion with respect to the request to extend the deadlines for fact discovery and Plaintiffs' Motion for Final Class Certification. (ECF No. 174.)

The Court's Order did not provide new deadlines; instead, in an attempt to comprehensively address—and complete—the contentious discovery process of this case, the Court set a deadline of July 22, 2016, for any motions to compel discovery on any outstanding issues. (*Id.*) The Order further stated that the Court would issue a new scheduling order when it ruled on the motions to compel. (*Id.*) This scheduling order would establish deadlines for Plaintiffs' deposition of Defendant pursuant to Federal Rule of Civil Procedure 30(b)(6) and other depositions, include a fact- and expert-discovery deadline, a scope as to what discovery

will be permitted during the extended discovery period, and a deadline for Plaintiffs' Motion for Final Class Certification. The Court also stated it would rule on Plaintiffs' Motion to Compel access to the rowAMPS database when it ruled on the other motions to compel, and granted Plaintiffs' request to pursue expert discovery, subject to Defendant's ability to object to such expert discovery pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and Federal Rule of Evidence 702. (*Id.*)

On July 22, 2016, Plaintiffs filed the Motion to Compel Production of Documents presently before the Court. (ECF No. 176.) Defendant responded on August 5, 2016, asserting that Plaintiffs are "trying to defer trial by engineering disputes." (ECF No. 178 at 1.) This was followed by another slew of briefing; Plaintiffs replied (ECF No. 182), Defendant filed a sur-reply (ECF No. 187), then Plaintiffs filed a supplemental brief in support of their Omnibus Motion (ECF No. 189), and Defendant responded to Plaintiffs' supplemental brief (ECF No. 190). The Court believes that the issues are now fully briefed and thus ripe for disposition.

## II.    Discussion

Plaintiffs' Motion to Compel asks the Court to order Defendant to produce the following documents: (1) email communications that were sent or received by any Plaintiff from or through a Percheron email account; (2) a list of names of individuals who received a litigation hold notice for this case, along with the dates of transmission and the categories of information that were addressed therein; and (3) all emails sent or received by Defendant's executives, project managers, and right-of-way supervisors that are responsive to Document Request Numbers 2, 3, 4, 5, 9, and 10 in Plaintiffs' Third Set of Requests for Production of Documents. (*See* ECF No. 176 ¶ 47; ECF No. 176-1.)

The Court will address separately each of these three requests in the sections that follow. The Court will also address below the issue of Plaintiffs' requested access to the rowAMPS database, which the Court deferred deciding until the parties had filed any remaining motions to compel. (*See* ECF No. 174.)

**A.      Request for Plaintiffs' Email**

Plaintiffs seek "[a]ny and all e-mail communications that were sent or received by any of the Plaintiffs from or through a Percheron e-mail account." (ECF No. 176 ¶ 47a.) Plaintiffs state that Defendant "failed to produce the emails from Plaintiffs' Percheron email accounts" in its production responsive to Plaintiffs' Document Request No. 2 in Plaintiffs' First Request for Production of Documents. (ECF No. 176 ¶¶ 3-5.) Document Request No. 2, subpart e, of Plaintiffs' First Request for Production of Documents, requested that Defendant produce the following documents:

> [T]he RWA's work records, including without limitation records sufficient to show the specific days on which the RWA worked, and, for each such day worked, the number of hours actually worked by the RWA, the specific field office from which the RWA was dispatched, the specific project to which the RWA was assigned, the specific activities the RWA performed, the specific transactions (*e.g.*, right-of-way acquisitions) in which the RWA was involved, and any log entries (including entries in the NSite or RPM system) evidencing specific work activity by the RWA.

(ECF No. 176-2 at 6.) Plaintiffs argue that, although this request does not specifically mention email, Plaintiffs' emails "are necessary to show the number of hours actually worked by the Plaintiffs and the specific activities the Plaintiffs performed." (ECF No. 176 ¶ 5.)

Plaintiffs state that, after Defendant did not produce emails in response to their First Request for Production of Documents, Plaintiffs' counsel "made several efforts to negotiate with

Defendant in an attempt to secure production of the Plaintiffs' emails," and attach to their Motion to Compel as Exhibit B correspondence between Plaintiffs' counsel and Defendant's counsel. (*See* ECF No. 176-3.) Plaintiffs also state that Defendant initially refused to produce the emails because they had not been sufficiently identified in Plaintiffs' First Request for Production of Documents, as cited above. (ECF No. 176 ¶ 7.) Plaintiffs assert, however, that Defendant subsequently agreed to produce Plaintiffs' emails, conditioned on the mutual resolution of other discovery disputes between the parties. (ECF No. 176 ¶ 8.) Plaintiffs note that Defendant acknowledged this agreement during oral argument before this Court. (*See* ECF No. 176 ¶ 8 (citing ECF No. 176-9 at 8).) As of the date of Plaintiffs' Motion to Compel, however, Defendant had not produced Plaintiffs' emails. (ECF No. 176 ¶ 11.)

Plaintiffs state that, "in an abundance of caution," they issued a Third Set of Requests for Production of Documents to Defendant on July 11, 2016, which explicitly requested Plaintiffs' emails. (ECF No. 176 ¶ 9; ECF No. 176-4 at 4-5.) Plaintiffs also argue that their correspondence with Defendant's counsel equates to a formal request for production of documents, and that the emails are particularly necessary because Defendant "did not keep proper records of the amount of time that Plaintiffs worked," and thus Plaintiffs must "rely on other methods . . . to meet their burden of proof." (ECF No. 176 ¶¶ 13, 16.) Plaintiffs state that the work records that Defendant has produced are insufficient to establish the number of hours Plaintiffs worked and the specific activities Plaintiffs performed, both of which Plaintiffs assert are relevant to their claims. (ECF No. 176 ¶ 17.)

Moreover, Plaintiffs point out that Defendant "has already extracted the Plaintiffs' emails, [so] there would be minimal, if any, burden on it to produce" these emails. (ECF No.

176 ¶ 19.)   In support of this statement, Plaintiffs cite the deposition of Rocky Wisinieski, Defendant's Director of Information Services, who testified that he "extrac[ted] e-mails" for Plaintiffs.  (ECF No. 176-5 at 4-9.)  Plaintiffs argue that they are entitled to these emails because "they are relevant to Plaintiffs' claims, because Plaintiffs requested them pursuant to Rule 34 of the Federal Rules of Civil Procedure on October 6, 2014 . . . and on July 11, 2016 . . . , and because Defendant has no valid basis for withholding them."  (ECF No. 176 ¶ 12.)  Plaintiffs also argue that Defendant will not be prejudiced by the production of Plaintiffs' emails.  (ECF No. 176 ¶ 20.)

In opposition to Plaintiffs' request for their emails, Defendant notes that "e-mail is not the primary method by which RWAs record their daily activities (rowAMPS is),"[2] and argues production of the emails would therefore not result in a significant volume of new relevant evidence.  (ECF No. 178 at 9.)  Although Plaintiffs claim that their emails are necessary to show the number of hours they worked and the activities they performed, Defendant argues that the specific activities performed by Plaintiffs are not at issue in this matter; the sole issue is the number of hours worked by each plaintiff during each week during the statutory period.  (ECF No. 178 at 10.)  Defendant notes that email traffic does not reflect a clock-in/clock-out process, and that the first email of the day does not equate to the start of the work day, nor does the last email equate to the end of the work day.  (ECF No. 178 at 10.)  Defendant further argues that it is "unreasonable to expect RWAs to have routinely written e-mails stating how long a particular task took."  (ECF No. 178 at 10.)

---

[2] rowAMPS is a product which Defendant licenses from GeoAMPS, LLC, and includes a database on which Defendant's employees record their project data.  (ECF No. 176 ¶ 25.)

Defendant also points out that most of the plaintiffs were not active email users, and states that "25 of the 31 RWAs averaged 3 or fewer e-mails per day *sent and received*." (ECF No. 178 at 10.) Furthermore, Defendant states that "more than half (53%) of the RWA e-mail content comes from the 4 most prolific users . . . Thus, any class-wide inference drawn from the RWA e-mail will be heavily skewed in favor of just 4 individuals—in other words . . . [the e-mail data will paint a picture that] primarily represent[s] the experience of just 13% of the class . . . rather than being a balanced representation of the entire population." (*Id.* at 11.)

Defendant also argues that the rowAMPS data which has already been produced is substantial and outlines information related to the Plaintiffs' daily tasks. Defendant states that this source of data is a "far richer source" from which to extrapolate information about each Plaintiff's daily hours than email would be. (ECF No. 178 at 11.) Lastly, Defendant takes issue with the fact that Plaintiffs seek production of these emails this late in the discovery process. Defendant points out that, although Plaintiffs claim that they made several efforts to negotiate with Defendant to secure the emails they seek, these efforts did not commence until May 2016—which was months after the underlying production was made. (*See* ECF No. 178 at 17 n.2.)

In reply, Plaintiffs assert that "Defendant cannot credibly argue that the production of Plaintiffs' email is burdensome" when analyzed separately from Plaintiffs' request for the email of executives, project managers, and right-of-way supervisors. (ECF No. 182 at 6.) Plaintiffs note that Defendant has offered to produce Plaintiffs' emails on several occasions and has never before raised an issue of cost with respect to these emails. (ECF No. 182 at 6-7.) Plaintiffs also restate their argument that these emails are relevant to the determination of how much time they worked each week and how many overtime hours they worked without proper

compensation because Plaintiffs' email was sent and received in the course of their employment with Defendant. (ECF No. 182 at 7.) Lastly, Plaintiffs note that, although the rowAMPS data will be helpful in proving their case, the data is far from complete, and argue that email is therefore necessary to fill in the gaps. (ECF No. 182 at 8.)

The Court is unpersuaded that Plaintiffs' Document Request No. 2, subpart e, is a request for the Plaintiffs' email communications. This Request seeks "work records," and explains that it is asking for records sufficient to show the days and hours worked, including the field office the plaintiff was dispatched from and the subject matter on which the plaintiff worked. (*See* ECF No. 176-2 at 6.) Although it is likely that the Plaintiffs' emails contain some of this information, it is not obvious that emails specifically are being sought, especially when other records—such as those contained in the rowAMPS and Manpower databases—contain the exact type of information specified in this Request. Precision in word choice and clarity are essential in legal writing; if Plaintiffs wanted emails in response to Document Request No. 2, they should have asked for emails.

The Court also notes that Plaintiffs could have been more diligent in pursuing production of emails. From the record, it appears Defendant's failure to produce emails was not raised as an issue by Plaintiffs until May 11, 2016. (*See* ECF No. 176-3 at 3.) As Defendant points out, "if Plaintiffs were concerned about receiving e-mail content, then one might at least have expected a deficiency letter once Percheron had completed its responsive productions in December 2015." (ECF No. 178 at 15.) Plaintiffs respond that they did not raise the issue earlier because they were occupied with responding to Defendant's discovery requests and because a technological issue arose with the thumb drive containing Defendant's December 2015

discovery responses. (ECF No. 164 at 3-4.) But discovery is not a turn-based process. Discovery inherently imposes competing obligations; parties must respond to discovery requests while submitting their own requests. This exchange necessarily entails reviewing discovery responses while preparing one's own responses. If this were not so, parties could extend discovery indefinitely by simply waiting to review responses until the discovery deadline before raising deficiencies. That is not how the discovery process is intended to work.

Notwithstanding Plaintiffs' lack of clarity in their Document Requests and their delay in raising the issue, however, the Court holds that Plaintiffs are entitled to production of their emails. Although Plaintiffs could have been more diligent in reviewing Defendant's discovery responses, Plaintiffs' delay was not manifestly unreasonable, and there is no indication that it resulted from dilatory motives. Further, the contents of the Plaintiffs' emails appear to be relevant to their claims and production seems proportional to the needs of the case. And, most importantly, production of the Plaintiffs' emails is proper because Defendant's counsel already stated it would produce them. (*See* ECF No. 176-3 at 22.) In support of these conclusions, the Court will now discuss these issues in turn, beginning with relevance and proportionality.

Defendant argues that it should not have to produce the Plaintiffs' emails because they are not sufficiently relevant to Plaintiffs' claims and production would be disproportional to the needs of the case. (ECF No. 178 at 9-14.) Defendant is certainly correct in stating that "[i]t is infeasible to use e-mail communications to determine how long each RWA worked," that "[e]-mail traffic is not akin to a clock-in/clock-out process," and that [t]he length of a work-day is not just the difference in time between the first and last e-mails of the day." (ECF No. 178 at 10.) But this does not mean that the Plaintiffs' emails are outside the scope of discovery.

As Plaintiffs note, Defendant has been unable to provide any rowAMPS data for 11 plaintiffs. (ECF No. 176 ¶ 17.) For these plaintiffs, emails may thus be the only evidence regarding hours and days worked. Nor are the emails relevant only to these plaintiffs. Defendant asserts that it "did not have any minimum number of hours requirement for day-rate payment to ROW agents," that it "does not dock the pay of its ROW agents," and that its Manpower database—which contains daily work reports—would reflect any pay anomalies and travel days. (ECF No. 178-4 at 5-6.) But Plaintiffs have shown that some of Defendant's Project Managers had their own policies regarding minimum number of hours requirements, travel days, and docking pay. (*See* ECF Nos. 182-3, 182-4.)

Thus, the Plaintiffs' emails may assist them in determining whether any additional informal work policies existed which were communicated to Plaintiffs. And the Plaintiffs' emails will allow them to cross-reference work activities against Manpower records. For example, if a given plaintiff has no Manpower data for a particular day but that plaintiff's emails indicate work activity for that same day, this discrepancy would be relevant to Plaintiffs' claims. Moreover, Plaintiffs cannot prove a negative with the Manpower database; if no Manpower record exists for a specific plaintiff on a particular day, the emails may provide an explanation as to why, or whether that plaintiff was told not to record their work. The Plaintiffs' emails are therefore "relevant to any party's claim or defense" under Federal Rule of Civil Procedure 26(b)(1).

The Court is also satisfied that production of the Plaintiffs' emails is not disproportional. Under Federal Rule of Civil Procedure 26(b)(1), parties may obtain discovery of relevant material that is

> proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Here, these factors weigh in favor of granting Plaintiffs' Motion with respect to their emails.

First, the issues at stake, namely Plaintiffs' wrongful-classification claims, are of importance to Plaintiffs, who—as Defendant concedes—were improperly classified and not properly paid overtime compensation. Second, the amount in controversy, although unknown at this time, is alleged to be "in excess of several million dollars" (ECF No. 182 at 10), and there is no indication this estimate is inaccurate. This factor thus also weighs in favor of Plaintiffs. And, as Defendant concedes, Defendant has greater resources and relatively greater access to the underlying information. (ECF No. 178 at 13.) Thus, the third and fourth factor also tilt in favor of Plaintiffs.

The Court acknowledges Defendant's argument that "the [R]ule must not be used to 'justify unlimited discovery requests addressed to a wealthy party', and should instead be employed to 'prevent use of discovery to wage a war of attrition or as a device to coerce a party, whether financially weak or affluent.'" (ECF No. 178 at 13 (quoting Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment).) But there is no indication that Plaintiffs are seeking production of their emails as an improper litigation strategy. On the contrary, it appears that Plaintiffs are pursuing production of their emails as a legitimate avenue of discovery on the issue of damages.

Defendant's argument against production of the Plaintiffs' emails focuses primarily on the fifth and sixth factors—the importance of the discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit. Defendant argues that the Plaintiffs' emails are of minimal relevance and that production would be exorbitantly expensive. (*Id.* at 13-14.) Defendant cites *Bowers v. Nat'l Collegiate Athletic Ass'n*, No. 97-2600 (JBS), 2008 WL 1757929 (D.N.J. Feb. 27, 2008), in support of its argument. In *Bowers*, the discovery sought was held to be disproportional because the movant had already had ample opportunity to seek the discovery and because the movant sought materials only marginally relevant. 2008 WL 1757929, at *5.

But this case is not *Bowers*. There, discovery had closed years earlier, and the parties had already engaged in approximately 31 months of discovery during which the movant never requested the discovery she subsequently sought. *Id.* at *1, *5-6. And the *Bowers* court based its conclusion that the discovery sought was "at best only 'marginally relevant'" on the grounds that the movant was seeking materials that—significantly—postdated the events giving rise to the case. *Id.* at *6. Here, the discovery deadline has not yet passed, and, as explained above, the evidence is not "marginally relevant"—it relates directly to the principal issue in this case, namely damages.[3]

---

[3] Additional facts further make *Bowers* inapposite. There, over a decade of litigation had taken place before the movant filed her motion to compel, prompting the court to note that "[t]he costs of litigating this case over these ten years, in this Court and the Court of Appeals, has surely dwarfed the financial stakes that remain at issue." *Bowers*, 2008 WL 1757929, at *6 (footnote omitted). The *Bowers* court further noted that the movant's previous discovery abuses also weighed against discovery. *See id.* at *6 n.5 ("A party that has behaved so inequitably in discovery at a cost of untold hours of time and years of unnecessary struggle, can hardly claim that even more discovery must be provided now.").

Notwithstanding Defendant's argument that the Plaintiffs' emails are only of slight relevance to resolving the damages issue, the Court finds that they would likely be sufficiently probative—and that the issue of damages is important enough—to satisfy Rule 26(b)(1)'s fifth factor. And the Court finds that Defendant's cost estimate satisfies Rule 26(b)(1)'s sixth and final factor.

With respect to Rule 26(b)(1)'s sixth factor, Defendant estimates that, using keyword searches to limit the review, reviewing the combined emails "would likely cost $735,000-$798,964 and take a team of 20 attorneys 12 weeks to complete."[4] (ECF No. 178 at 9.) The Court recognizes this would be a significant expenditure. But given the Court's denial of Plaintiffs' request to compel production of the emails of Defendant's executives, project managers, and ROW supervisors—discussed below—the cost of review and production will be significantly less. And Defendant, through its inability to provide any rowAMPS data for 11 plaintiffs or provide other robust records indicating hours worked for all plaintiffs—which Defendant was required to keep under federal law—has placed Plaintiffs in the position of having to puzzle together damages. Thus, the Court finds both that the Plaintiffs' emails are relevant and that their production does not run afoul of Rule 26(b)(1)'s proportionality requirement.

---

[4] It is important to note that Defendant's estimate of the cost of review and production combines Plaintiffs' request for their emails with Plaintiffs' request for the emails of Defendant's executives, project managers, and ROW supervisors.

This leaves Defendant's arguments regarding Plaintiffs' delay in seeking production of their emails.[5] Plaintiffs' delay in pursuing production of their emails was not manifestly unreasonable. Plaintiffs state that Defendant served its document production on December 23, 2015. (ECF No. 164 at 3.) The record demonstrates that Plaintiffs raised alleged deficiencies in Defendant's document production on April 5, 2016—approximately 3.5 months after Defendant's document production. (*See* ECF No. 164-2 at 1.) It appears that Plaintiffs were diligent thereafter in their efforts to resolve these alleged deficiencies, and production of the Plaintiffs' emails was mentioned during these efforts. (*See* ECF No. 176-3 at 3.)

Thus, Plaintiffs' delay of approximately 3.5 months between receiving Defendant's document production and reviewing that production is the time period during which Plaintiffs' counsel could have been more diligent. But by April 5, 2016, the discovery deadline of July 20, 2016, was still over three months away. (*See* ECF No. 140.) Although Plaintiffs' diligence in conducting the document review cannot be found to be exemplary, when viewed objectively, Plaintiffs' 3.5 month delay before completing the document review was not manifestly unreasonable given their competing obligations. (*See* ECF No. 164 at 3.)

---

[5] As a threshold matter, the cases cited by Defendant on this point are inapposite. In *Courtney v. Ivanov*, No. 13-cv-227, 2016 WL 1367755 (W.D. Pa. Apr. 6, 2016), this Court denied a defendant's motion to compel discovery and request for discovery extension because the defendant served discovery requests the day before the discovery deadline and because the Court had already extended discovery four times, the fourth time going so far as to state that "[t]he Court expects the parties to complete fact discovery by 9/18/2015 with no additional requests to extend discovery." 2016 WL 1367755, at *4 (internal quotation marks and citation omitted). *Brown v. James*, No. 3-cv-631, 2009 WL 743321 (M.D. Pa. Mar. 18, 2009), is similarly disparate; there, the basis for denying plaintiff's fourth motion to compel was "that the requested materials [were] irrelevant." 2009 WL 743321, at *4. The *Brown* court did in passing note the "long period of discovery" that had already elapsed, but—unlike here—that "long period of discovery" was four years. *See id.* at *1. The remaining cases cited by Defendant are likewise dissimilar; chiefly, in none of them did the non-movant actually tell the movant that it would produce the documents.

-15-

The foregoing discussion does not mean Plaintiffs' impression that they had actually requested their emails itself was reasonable. Defendant has a strong argument that Plaintiffs' impression on this point was unreasonable, and that Plaintiffs' actual request for production of their emails came too late in the discovery process to be valid. But if Defendant truly believed that Plaintiffs' request was too late and too burdensome, it should not have told Plaintiffs it would produce the emails.

Indeed, that is an important reason why production of the Plaintiffs' emails is proper—because Defendant's counsel explicitly told Plaintiffs' counsel that Defendant would produce them. (*See* ECF No. 176-3 at 22 ("Notwithstanding these objections, in an effort to resolve these issues, Defendant will produce the requested emails once we reach agreement on the remaining issues below, and once the Plaintiffs' phone records have been produced.").) Plaintiffs thereafter stated they were prepared to begin a rolling production of Plaintiffs' telephone records. (ECF No. 176-3 at 37.) At oral argument on Plaintiffs' Omnibus Motion, Defendant's counsel was asked whether any of the issues on which production of the Plaintiffs' email was conditioned were still outstanding:

> THE COURT: Aside from the motion to compel,
> they're asking for the e-mails. You said you would give them
> to them in June, but there were other things to be resolved.
> Are those things still outstanding?
> MR. PRITCHARD: Yes.
> THE COURT: Okay. Tell me what they are.
> MR. PRITCHARD: The plaintiffs will not stop
> demanding new things.

(ECF No. 175 at 39:4-11.) But Defendant's counsel did not, and has not, identified any specific issues on which production of the Plaintiffs' email was conditioned that are still outstanding.

Moreover, the purpose of this Court's July 22, 2016 deadline for the filing of motions to compel was to comprehensively address all issues that are still outstanding. Following issuance of this Memorandum Opinion, all discovery issues should be resolved.

Defendant's counsel cannot extract concessions from Plaintiffs based on representations and then not make good on those representations. The provisions of the Federal Rules of Civil Procedure governing discovery rely on the honesty and good faith of counsel, and it is integral to the discovery process that counsel's statements can be relied upon. Thus, because the Plaintiffs' emails are relevant, because their production is proportional to the needs of this case, and because Defendant has said it will produce them, Defendant is ordered to produce Plaintiffs' emails.

### B. Requests for Email of Executives, Project Managers, and Right-of-Way Supervisors

The second category of emails that Plaintiffs seek is "all emails sent or received by Defendant's executives, project managers and right-of-way supervisors that are responsive to Document Request Nos. 2, 3, 4, 5, 9 and 10 in Plaintiffs' Third Set of Requests for Production of Documents." (*See* ECF No. 176 ¶ 47c.) Plaintiffs state that on July 11, 2016, they served upon Defendant a Third Set of Requests for Production of Documents. (ECF No. 176 ¶ 39; ECF No. 176-4.) This Set of Requests included, in relevant part, the following requests for production:

> DOCUMENT REQUEST NO. 2: Any and all e-mail communications that discuss, describe, mention or relate to any of the Plaintiffs' work schedules or hours worked.

> DOCUMENT REQUEST NO. 3: Any and all e-mail communications that discuss, describe, mention or relate to Percheron's compensation of RWAs.

DOCUMENT REQUEST NO. 4: Any and all e-mail communications that discuss, describe, mention or relate to the docking of pay for any RWA.

DOCUMENT REQUEST NO. 5: Any and all e-mail communications that discuss, describe, mention or relate to the minimum number of hours per day that are required for an RWA to work in order to qualify for payment of the applicable day rate.

* * *

DOCUMENT REQUEST NO. 9: Any and all documents, including but not limited to e-mail communications, that discuss, describe, mention or relate to any occurrence in which an RWA performed work on a project for Percheron but did not receive payment of a full day rate for that day.

DOCUMENT REQUEST NO. 10: Any and all documents, including but not limited to e-mail communications, that discuss or describe the method by which the number of travel days an RWA is allotted for the trip from his or her residence to the project location (*see, e.g.*, PFS 01763, "Comments/Special Provisions: Jack is traveling from Montana so he will have 3 days travel.").

(ECF No. 176-4 ¶ 40.)  Plaintiffs state that, after Oral Argument before this Court, the parties attempted to resolve discovery disputes by telephone conferences on July 15 and 18, 2016.  (ECF No. 176 ¶ 10, 41.)  Plaintiffs further state that Defendant's counsel "agreed to inquire about any written policies that could be responsive to some of these requests, but categorically refused to produce any responsive emails."  (ECF No. 176 ¶ 41.)  Plaintiffs concede that the thirty-day response time under Rule 34 had not passed as of the date of their Motion to Compel, but explain that they included these requests in the Motion pursuant to the Court's Order that the parties file motions to compel with respect to any remaining discovery disputes no later than July 22, 2016.  (*See* ECF No. 176 ¶ 42.)  Plaintiffs indicate that they "are willing to . . . limit the

scope of the email portion of these requests to executives, project managers and right of way supervisors." (ECF No. 176 ¶ 43.)

Plaintiffs argue these requests are relevant for the same reasons the Plaintiffs' emails are relevant; the non-RWAs' emails will be probative on the issue of damages because they will assist in establishing the hours worked by Plaintiffs and may disclose Defendant's policies concerning hours and pay. (ECF No. 176 ¶ 44-46.) In opposition to Plaintiffs' request for the non-RWAs' emails, Defendant makes similar arguments as they did to discovery of the Plaintiffs' emails—Defendant asserts that the emails are of minimal relevance, that the requests are disproportional to the needs of the case because production would be exorbitantly expensive, and that Plaintiffs' delay in seeking these documents was unreasonable. (*See* ECF No. 178.) On this last point, Defendant notes that Plaintiffs served their Third Set of Requests for Production of Documents nine days before the fact discovery deadline in place at that time, which was July 20, 2016. (ECF No. 189 at 11.)

Defendant also points out that "the parties agreed in March 2016, as a condition of the previous extension of the discovery deadline, that no new discovery requests would be propounded, except to the extent that new documents were identified that were not known to the parties prior to the agreement." (ECF No. 178 at 14 (citing ECF No. 178-8).) Thus, Defendant argues, the Third Set of Requests filed on July 11, 2016, is in direct contradiction of the agreement that the parties reached in March 2016. (*Id.*) Defendant further states that even Plaintiffs' Omnibus Motion did not seek to compel production of emails (Plaintiffs' or

otherwise), weakening Plaintiffs' argument that they contemplated receiving these materials all along.[6]  (*Id.* at 15.)

In their Reply, Plaintiffs dispute Defendant's cost estimate for producing the responsive emails.  (ECF No. 182 at 6-7.)  Specifically, Plaintiffs suggest that Defendant will not have to review the emails for confidentiality or responsiveness "because Plaintiffs have asked for all of them, and they can all be preemptively marked confidential."  (ECF No. 182 at 6.)  Plaintiffs assert that this will result in the cost of production being significantly lower than Defendant's estimate.[7]  (*Id.*)

Based on the March 2016 agreement between the parties and Plaintiffs' delay in seeking the non-RWAs' emails, the Court holds that Plaintiffs are not entitled to production of the non-RWAs' emails.

In the March 2016 agreement, Plaintiffs' counsel stated that the parties mutually "agreed there may be things regarded as deficiencies in earlier requests, and each side may continue to pursue these requests, but that *neither side will initiate a whole new round of discovery requests.*" (ECF No. 178-8 at 2 (emphasis added).)  Plaintiffs' counsel did add some disclaimers to this agreement; if depositions revealed the existence of previously unknown documents or left questions unanswered, or if the discovery related to "documents [Plaintiffs] specifically

---

[6] Defendant overstates the significance of this fact as it relates to the Plaintiffs' emails.  Plaintiffs' Omnibus Motion sought a discovery extension, and Plaintiffs' Memorandum in Support explained this was prompted by Defendant's "refusal to timely produce Plaintiffs' emails."  (ECF No. 164 at 1.)  But Defendant is correct that Plaintiffs' Omnibus Motion never refers to the non-RWAs' emails, and that there is no other indication in the record that Plaintiffs ever sought or expected those emails.

[7] This response is unpersuasive.  Plaintiffs are entitled only to responsive documents.  FED. R. CIV. P. 26(b)(1).  It would certainly reduce discovery expenses if parties produced all materials in their possession regardless of their relevancy or responsiveness.  But "give us everything" is not a valid discovery request, *see* FED. R. CIV. P. 26(b)(2)(C)(iii), and Plaintiffs are not entitled to non-discoverable materials simply because it would reduce costs.

identified as important sources of information," then limited discovery requests would be appropriate. (*Id.*)

Unlike the previously discussed Plaintiffs' emails, however, Plaintiffs have not argued that their requests for the non-RWAs' emails relate back to a previous discovery request. Indeed, Plaintiffs concede that the non-RWAs' emails were not requested until July 11, 2016—nine days before the discovery deadline. (*See* ECF No. 176 at 9-11.) Further, Plaintiffs cannot plausibly argue that they previously identified the non-RWAs' emails as important sources for this information. As Defendant points out, Plaintiffs previously sought the type of information they are now requesting—but specifically exempted emails in those requests. (ECF No. 178 at 14-15 (citing ECF Nos. 176-2 at 8, 176-6 at 5).) Thus, the requests for the non-RWAs' emails are essentially "a whole new round of discovery requests," which the parties agreed not to pursue in March 2016. (ECF No. 178-8 at 2.)

Plaintiffs might respond that the March 2016 agreement was not meant to block off alternate avenues of discovery on the same topics. But here Plaintiffs' delay is significant; Plaintiffs knew what Defendant had produced by April 2016. Plaintiffs could then have immediately sought production of the non-RWAs' emails if they believed Defendant's production was insufficient. But Plaintiffs did not do so, and the record indicates that Plaintiffs' counsel never raised the non-RWAs' emails during their subsequent correspondence with Defendant's counsel. And—unlike the Plaintiffs' emails—Defendant never agreed to produce the non-RWAs' emails.

Plaintiffs have demonstrated that the non-RWAs' emails would be relevant and probative. "But you are supposed to ask for things well in advance of the end of the discovery

period." (ECF No. 175 at 65:18-20.)  The Court notes that the discovery deadline was originally February 15, 2015, but was revised to July 20, 2016, as the result of extensions.  In light of the parties' March 2016 agreement and Plaintiffs' failure to request the non-RWAs' emails until nine days before the discovery deadline, the Court holds that Plaintiffs are not entitled to production of the non-RWAs' emails.

### C.    Litigation Hold Information

Lastly, Plaintiffs seek "a list of names of individuals who received a litigation hold notice for this case, along with the dates of transmission and the categories of information that were addressed therein."  (ECF No. 176 ¶ 47b.)  Plaintiffs state that on August 24, 2015, they served a Second Set of Interrogatories and Second Request for Production of Documents on Defendant's counsel.  (ECF No. 176 ¶ 21.)  In this request, Plaintiffs directed Defendant in part as follows:

> INTERROGATORY NO. 17: Identify each person who took some action, or who was instructed to take some action, to preserve electronic evidence that could be relevant to the claims and defenses in this litigation and describe in detail what action was taken and when.

> INTERROGATORY NO. 18: Identify each person to whom you sent a litigation hold notice in connection with this case and the date on which you sent each such litigation notice.

(ECF No. 176-6 at 3.)  On December 22, 2015, Defendant responded to Plaintiffs' August 2015 discovery requests, but refused to respond to Interrogatory Requests 17 and 18, citing attorney-client privilege and the work-product doctrine.  (ECF Nos. 176 ¶ 23; 176-7 at 4.)

Subsequently, Plaintiffs modified their request to seek only a "list of names of individuals who received a litigation hold notice for this case, along with the dates of

transmission and the categories of information that were addressed therein." (*Id.* ¶¶ 32-33.) As

of the date of Plaintiffs' Motion to Compel, Defendant had informed Plaintiffs that "Defendant

has explicitly instructed relevant employees . . . to ensure that the information . . . is preserved

pending the resolution of this lawsuit." (*Id.* ¶ 34.) But Plaintiffs argue that this explanation

does not satisfy their request for the litigation-hold notices.

In opposition to Plaintiffs' Motion to Compel, Defendant argues that a threshold finding

of spoliation is necessary before the production of litigation-hold notices is appropriate. Indeed,

"[a]s a general matter hold letters are not discoverable, particularly when a party has made an

adequate showing that the letters include material protected under attorney-client privilege or

the work-product doctrine." *Major Tours, Inc. v. Colorel*, No. 05-cv-3091 (JBS/JS), 2009 WL

2413631, at *2 (D.N.J. Aug. 4, 2009). But this bar does not extend to the information surrounding

preservation efforts. *In re eBay Seller Antitrust Litig.*, No. 07-cv-1882 JF (RS), 2007 WL 2852364,

*2-3 (N.D. Cal. Oct. 2, 2007) (granting discovery of defendant's collection and retention policies,

including the "kinds and categories" of preserved data, the steps taken, and the identities of

employees who received related instructions). Although Defendant argues vigorously that its

preservation efforts and productions to date have been adequate and constitute the "best"

evidence, Defendant cannot show that the attorney-client privilege or work-product doctrine

apply to the information surrounding the preservation efforts.

At this juncture, the Court will not delve into the adequacy of Defendant's preservation

efforts or whether it has already produced the best evidence. Given the extensive sources of

relevant data and Plaintiffs' legitimate concerns regarding Defendant's preservation efforts, as

well as the limited burden that producing the information will impose, the Court grants

Plaintiffs' Motion to Compel with respect to the *facts surrounding* Defendant's preservation efforts.

Specifically, Defendant is ordered to produce a list of the individuals and custodians who received a litigation-hold notice for this case, which is to include the date each notice was issued and the categories of data Defendant has targeted for preservation as well as the steps Defendant has taken to date to preserve this data. Defendant need not produce the litigation-hold notices themselves, nor disclose any communications between its attorneys and employees. Further, the Court stresses that—to the extent this issue arises in depositions—Plaintiffs' future inquiries should focus on the data-preservation steps themselves, and not the contents of any communications between Defendant's counsel and its employees.

### D.     Access to rowAMPS Database

There remains outstanding also an issue from Plaintiffs' Omnibus Motion (ECF No. 164), namely Plaintiffs' Motion to Compel access to the rowAMPS database. Plaintiffs originally argued they needed direct access to the rowAMPS database because "[i]t will show when Plaintiffs were logged in to rowAMPS to perform work-related tasks," which would be relevant to Plaintiffs' damages calculations, and because "Plaintiffs are circumspect—to say the least—about whether Percheron can safely be relied upon to extract complete data from rowAMPS and provide it to Plaintiffs." (ECF No. 164 at 15.) On August 30, 2016, Plaintiffs filed a Supplemental Brief in support of their Omnibus Motion, explaining that Plaintiffs consulted with Yogesh Khandelwal, President and CEO of geoAMPS, and reached an agreement with him to have geoAMPS extract the data for which Plaintiffs seek access to the rowAMPS database. (ECF No. 189 at 2-3.) Specifically, Plaintiffs explained that:

> It is the intent of Plaintiffs' counsel to proceed immediately with having Khandelwal extract the data, which means that the data should be available within the next two to three weeks. Once the data is obtained, Plaintiffs' counsel intends to have it analyzed by a firm retained to support this effort, and would expect to have the results of this analysis within another two to three weeks of obtaining the data. Thus, if Khandelwal (and geoAMPS) can provide the data within the two weeks indicated, Plaintiffs' counsel expects to have the results in usable form by approximately October 1, 2016.

(*Id.*)

Although Plaintiffs have not withdrawn their Motion to Compel direct access to the rowAMPS database, their agreement with Khandelwal illustrates why this Court's intervention is no longer warranted: Plaintiffs have received, or will receive in the near future, the data they seek. Once Khandelwal provides Plaintiffs with the extracted data, Plaintiffs' reasons for seeking direct access to the rowAMPS database are no longer applicable. Thus, there is no reason for this Court to compel Defendant to provide Plaintiffs with direct access to data they already, or will shortly, have. Although Plaintiffs' Motion to Compel direct access to the rowAMPS database is not quite mooted—Plaintiffs' agreement with Khandelwal does not provide them with the exact type of relief they seek, namely direct access to the database—the Court finds that Plaintiffs' arguments as to why direct access is needed are no longer applicable. Thus, Plaintiffs' Motion to Compel direct access to the rowAMPS database is denied.

### III.    Conclusion

For the foregoing reasons, Plaintiffs' Motion to Compel (ECF No. 176) is **GRANTED IN PART** and **DENIED IN PART**. A corresponding Order follows. The Court will issue also a separate Scheduling Order.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIC BOYINGTON, on behalf of himself  )      CASE NO. 3:14-CV-90
and all others similarly situated,      )
                             )      JUDGE KIM R. GIBSON
         Plaintiffs,     )
                             )
    v.                          )
                             )
PERCHERON FIELD SERVICES, LLC,   )
                             )
        Defendant.    )

### ORDER

**NOW**, this 14th day of October 2016, upon consideration of Plaintiffs' Motion to Compel (ECF No. 176) and for the reasons set forth in the Memorandum Opinion accompanying this Order, Plaintiffs' Motion is **GRANTED IN PART** and **DENIED IN PART**. It is **HEREBY ORDERED AS FOLLOWS:**

- Plaintiffs' Motion is **GRANTED** with respect to their request for Plaintiffs' emails. Defendant will produce all emails that were sent or received by any Plaintiff from a Percheron email account;

- Plaintiffs' Motion is **DENIED** with respect to their request for all emails sent or received by Defendant's executives, project managers, and right-of-way supervisors responsive to Document Request Nos. 2, 3, 4, 5, 9, and 10 in Plaintiffs' Third Set of Requests for Production of Documents;

- Plaintiffs' Motion is **GRANTED** with respect to their request for information regarding Defendant's litigation-preservation efforts. Defendant will produce a list of the individuals and custodians who received a litigation-hold notice for this case, which will include the date each notice was issued, the categories of data Defendant has targeted for preservation, as well as the steps Defendant has taken to date to

preserve this data.     Defendant need not produce the litigation-hold notices themselves, nor disclose any communications between its attorneys and employees.

It is further **ORDERED** that Plaintiffs' Motion to Compel Access to the rowAMPS database (ECF No. 164) is **DENIED**.

**BY THE COURT:**

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**