# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ERIC BOYINGTON,** *on behalf of himself and all others similarly situated,* ) ) ) | Case No. 3:14-cv-90 |
| ) | JUDGE KIM R. GIBSON |
| **Plaintiffs,** ) ) | |
| v. ) ) | |
| **PERCHERON FIELD SERVICES, LLC,** ) ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

This case arises out of Eric Boyington's employment by Percheron Field Services, LLC. Boyington filed this case in this Court on May 7, 2014, alleging that Percheron improperly classified him and his co-workers as exempt employees under the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201-19, and the Pennsylvania Minimum Wage Act (PMWA), 43 Pa. Cons. Stat. §§ 333.101-15. (ECF No. 1 ¶ 1.) Boyington seeks damages for non-payment of overtime wages for himself and all others similarly situated, as well as liquidated damages and reasonable attorneys' fees and costs under the FLSA. (*Id.* ¶ 75.)

On December 15, 2016, Plaintiffs filed a motion to compel Percheron to produce certain documents for two purported opt-in plaintiffs, Jeremy Scott Riley and John Stewart. (ECF No. 213.) In response, Percheron filed a motion to dismiss Riley and Stewart from the case (ECF No. 214), arguing that they should be dismissed because their opt-in consent forms were filed approximately seven and one-half months after the court-ordered opt-in deadline.

For the reasons that follow, Percheron's motion to dismiss (ECF No. 214) is **DENIED** and Plaintiffs' motion to compel (ECF No. 213) is **GRANTED**.

I.      Background

On June 16, 2015, this Court granted Boyington's motion to conditionally certify a class under the FLSA in this case.[1] (ECF No. 97, *Boyington v. Percheron Field Servs., LLC*, No. 14-cv-90, 2015 WL 3756330, at *3 (W.D. Pa. June 16, 2015).) In support of his conditional-certification motion, Boyington argued that the class should be given notice by both regular mail and email "[b]ecause the Proposed FLSA Notice Group includes many persons who[m] are no longer employed by Percheron, and for whom Percheron may not have an accurate mailing address." (ECF No. 46 at 16.) Percheron opposed notice by email, and argued that Boyington had failed to show a compelling reason why notice by email was necessary. (ECF No. 66 at 12-14.)

This Court determined that Percheron was correct on the email-notice issue, and found that "requiring the provision of email addresses of the members of the conditionally certified class [would be] overly intrusive." *Boyington*, 2015 WL 3756330, at *3. The Court instructed Boyington to notify class members via first-class mail, but noted that it was "willing to revisit the issue should notification via first-class mail prove to be insufficient." *Id.* The Court further instructed the parties to meet to reach an agreement on the logistics of contacting the class. *Id.* That instruction resulted in the parties filing a joint motion for approval of court-facilitated notice (ECF No. 110), which included a proposed opt-in consent form. The proposed opt-in consent form gave recipients sixty days from the date on which the notice was mailed out to opt into the class by returning the consent form to the notice administrator. (ECF No. 110-1.) The Court approved the parties' proposed notice and opt-in consent form on August 26, 2015 (ECF No. 115), and the notices and forms were mailed out on September 1, 2015 (ECF No. 215-1).

---

[1] No class has yet been certified under Federal Rule of Civil Procedure 23 for Boyington's PMWA claim.

Thus, the deadline for class members to opt into the class was October 31, 2015. (*E.g.*, ECF No. 116.)

Many opt-in notices were filed during September, October, and November 2015. (*See* ECF Nos. 115-16, 119, 121-28.) Most of the notices filed during those months were signed and dated before the October 31, 2015 deadline. (*See* ECF Nos. 115-16, 119, 121-26.) Some were not: the opt-in notice for Christina Kibel (ECF No. 127) was dated November 9, 2015, and the opt-in notices for Barbara and Lowell Parlow (ECF No. 128) were dated November 18, 2015.[2] Then, on June 13 and 16, 2016, two more belated opt-in notices were filed: one on behalf of Jeremy Scott Riley (ECF No. 160) dated June 10, 2016, and one on behalf of John Stewart (ECF No. 161) dated June 15, 2016. Until now, no party raised any issue or offered any explanation regarding the opt-in notices signed and filed after October 31, 2015.

The parties were actively engaged in discovery while conditional-certification briefing was taking place. On October 6, 2014, Plaintiffs served Percheron with their first request for production of documents (ECF No. 213-2). That request sought, among other things, several categories of class members' work records. (*Id.* at 7.) Percheron responded to Plaintiffs' first request for production of documents on December 22, 2015. (ECF No. 213-3.) Percheron's response thus predates the opt-in notices for Riley and Stewart. After noting some objections, Percheron stated in its response that "to the extent that Defendant has documents responsive to this request, they have been produced herewith, including the personnel files, pay records and work records of the plaintiffs who have opted into this action." (*Id.* at 3-4.)

---

[2] Neither Percheron nor Plaintiffs mention the belated opt-in notices by Kibel or the Parlows in their briefing. Because no party raises any issue regarding Kibel or the Parlows, the Court assumes there is no dispute about their status and will treat them as proper opt-in plaintiffs.

Discovery in this case has been contentious. After extensive briefing about a discovery dispute regarding Percheron's discovery obligations, the Court on October 14, 2016, issued a memorandum opinion and order resolving the dispute. (ECF No. 191, *Boyington v. Percheron Field Servs., LLC*, No. 14-cv-90, 2016 WL 6068813, at *1 (W.D. Pa. Oct. 14, 2016).) The Court's opinion was based in part on an agreement reached between the parties in March 2016. (*See* ECF No. 191 at 20, *Boyington*, 2016 WL 6068813, at *10.) Subject to some disclaimers, the substance of the March 2016 agreement was that neither side would promulgate new discovery requests—though the parties remained free to pursue perceived deficiencies in earlier discovery requests. (*See id.*)

After issuing the October 14, 2016 opinion, the Court held a discovery status conference and issued a case-management order (ECF No. 203) which established new deadlines and defined the scope of discovery going forward. Regarding the scope of discovery, the order provided that

> [d]uring the remaining fact-discovery period, in accordance with the parties' March 2016 agreement, the scope of document discovery is limited strictly to information covered by, and any alleged deficiencies in, discovery requests that were propounded before March 2016. This scope includes discovery produced pursuant to the Court's Memorandum Opinion and Order dated October 14, 2016 (ECF No. 191).

(ECF No. 203 at 2.)

On December 15, 2016, Plaintiffs filed the motion to compel currently before the Court (ECF No. 213). In their motion, Plaintiffs explain that Percheron has produced work records for all opt-in plaintiffs except Riley and Stewart and state that Percheron has refused to produce records for Riley and Stewart on the basis that their opt-in forms were filed after the opt-in

deadline. (*Id.*) Plaintiffs seek an order directing Percheron to produce the work records for Riley and Stewart. Plaintiffs argue that Riley and Stewart are proper plaintiffs and that Percheron is therefore obligated to produce their records. Percheron disagrees, and has moved to dismiss Riley and Stewart from the case. (ECF No. 214.)

**II.      Analysis**

The principal issue presented by Plaintiffs' motion to compel and Percheron's motion to dismiss is whether Riley and Stewart are proper plaintiffs in this case. If they are, then Percheron is likely obligated to produce their records. If they are not, then they should be dismissed from this case because they are not valid parties.

The FLSA does not specify a time period within which a person must opt into a FLSA collective action. *See* 29 U.S.C. § 216(b). Such deadlines are set by the district court, which has "equitable powers to manage the litigation in order to promote judicial economy and fairness to litigants." *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 313 (3d Cir. 2003). In this circuit, courts analyze whether to excuse untimely opt-in requests under the excusable-neglect and good-cause standards. *Camesi v. Univ. Of Pittsburgh Med. Ctr.*, No. 09-cv-85, 2009 WL 4573287, at *2 (W.D. Pa. Dec. 1, 2009) (citing cases); *see Dasilva v. Esmor Corr. Servs., Inc.*, 167 F. App'x 303, 307 (3d Cir. 2006) ("courts typically analyze late claims in class actions under the rubric of . . . excusable neglect" (internal quotation marks and citation omitted)).

Under the good-cause standard, courts examine what the standard's name suggests; whether the party seeking to excuse its untimely filing has a good reason for its delay. *See, e.g., Moya v. Pilgrim's Pride Corp.*, No. 06-cv-1249, 2006 WL 3486739, at *2 (E.D. Pa. Nov. 30, 2006). Under the excusable-neglect standard, courts examine several factors and whether they weigh

in favor of excusing the untimely filing. *See In re Orthopedic Bone Screw Prod. Liab. Litig.*, 246 F.3d 315, 321-23 (3d Cir. 2001) (citing *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993)). Here, the relevant factors under the excusable-neglect standard are: (1) the danger of prejudice to the nonmovant; (2) the length of the delay and its potential effect on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movants; and (4) whether the movants acted in good faith. *See id.* at 322-23.

Percheron argues that Riley and Stewart have offered no explanation for their tardiness. It further alludes to arguments that sound in estoppel and waiver. Percheron states that Plaintiffs stipulated to the notice protocol and opt-in deadline, and appears to argue that this precludes Plaintiffs from seeking to be excused from the opt-in deadline now. Further, Percheron argues that a letter sent by Plaintiffs' counsel on July 6, 2016—which listed the opt-in plaintiffs for whom work records had not yet been produced but omitted Riley and Stewart— proves that "Plaintiffs' counsel did not consider Riley and Stewart as proper opt-in plaintiffs." (ECF No. 223 at 4-5.)

Percheron is correct in noting that Plaintiffs initially offered no explanation for why the opt-in forms for Riley and Stewart were filed late. But they have since submitted declarations by Riley and Stewart explaining the events leading up to their opt-in forms being filed. Riley states that he was living and working in Georgia at the time the notice and consent forms were mailed out, and that his mail was still being sent to his permanent address in Maryland. (ECF No. 220-1 ¶¶ 7-8.) He states further that he never found any mail concerning this case even after he returned to Maryland, and that he did not receive a consent form until he contacted Plaintiffs' counsel in June 2016 to find out more about the case. (*Id.* ¶¶ 9-12.) As for Stewart, he

explains that in the summer of 2015 he split his time working between several states, and that in June 2015 he moved his residence from Mississippi to Texas, but continued to live in Tennessee while he worked for Percheron. (*See* ECF No. 220-2 ¶¶ 7-8.) Stewart states that his cousin, who lived with him in Texas, would periodically forward his mail to him in Tennessee. (*Id.* ¶ 9.) Like Riley, Stewart explains that he never received a notice or consent form until he contacted Plaintiffs' counsel in June 2016 to find out more about the case. (*Id.* ¶¶ 10-11.)

Under these circumstances, good cause and excusable neglect are met. *See Thompson v. Peak Energy Servs. USA, Inc.*, No. 13-0266, 2014 WL 789087, at *2 (W.D. Pa. Feb. 26, 2014) (good cause satisfied because belated opt-in plaintiffs were away from their homes for work and did not receive notice by mail or were affected by delays in postal service). Riley and Stewart have explained that they were away from their mailing addresses and that even when they returned they did not find a notice or consent form. Although Percheron pointedly notes that there is no evidence that the forms were returned as undeliverable and that Riley and Stewart were responsible for making arrangements to receive their mail regardless of where they were, sufficient excusable-neglect factors weigh in favor of excusing their tardiness.

To review, the relevant factors here under the excusable-neglect standard are: (1) the danger of prejudice to Percheron; (2) the length of the delay and its potential effect on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of Riley and Stewart; and (4) whether Riley and Stewart acted in good faith. *See Orthopedic Bone Screw Prod. Liab. Litig.*, 246 F.3d at 322-23. The failure of Riley and Stewart to take better steps to receive their mail while away from their homes goes to the third factor—the reason for the delay and whether it was within the reasonable control of Riley and Stewart—and weighs in

Percheron's favor. But the danger of prejudice to Percheron, the length of the delay and its potential effect on judicial proceedings, and whether Riley and Stewart acted in good faith all weigh in favor of excusing the delay.

First, the extent of prejudice to Percheron is minimal. Discovery in this case remains ongoing and Percheron has until August 16, 2017, to complete discovery regarding the opt-in plaintiffs. (ECF No. 203 ¶ 2.a.) Although Percheron argues that producing work records for Riley and Stewart would be burdensome and that it would be unfair to permit them to opt-in now, the Court is unconvinced that permitting two plaintiffs to opt-in at this time would impose a substantial burden on Percheron.[3] Second, the length of delay—although significant (approximately seven and one half months)—does not substantially affect the course of this litigation. There is no indication that allowing Riley and Stewart to opt-in would delay this case, and any possible delay resulting from their addition would likely be minor. Third, there is no indication of anything but good faith on the part of Riley and Stewart. They aver that they acted diligently upon finding out about this lawsuit, and Plaintiffs' counsel confirms this. (*See* ECF Nos. 220-1, 220-2, 220-3 ¶¶ 2-4.)

Nor is the Court convinced by Percheron's argument that Plaintiffs' agreement to the notice protocol means they are now estopped from seeking to include Riley and Stewart in the case. Plaintiffs agreed to send notice by first-class mail only after the Court rejected their request to send notice also by email. Their agreement to the protocol therefore has little bearing

---

[3] A different conclusion might follow if substantially more plaintiffs sought to opt in or if permitting them to do so would result in significantly more discovery.

on the issues before the Court; they essentially agreed to what the Court had already ordered. Thus, the Court will permit Riley and Stewart to opt-in.

This leaves Plaintiffs' motion to compel Percheron to produce work records for Riley and Stewart. Percheron argues that it should not have to produce these records because Plaintiffs' request for them runs afoul of the parties' March 2016 agreement. Not so. Although Plaintiffs could have been more diligent and raised Percheron's failure to produce work records for Riley and Stewart earlier, the March 2016 agreement excepted "things regarded as deficiencies in earlier requests." (ECF No. 178-8 at 2.) Plaintiffs made their original request for work records on October 6, 2014 (*see* ECF No. 213-2), and although Riley and Stewart were not yet plaintiffs at that time, the request for their work records therefore relates back to a pre-March 2016 discovery request. It is not an entirely new discovery request. If Plaintiffs sought a new category of documents or otherwise issued an altogether new discovery request, those requests would violate the parties' March 2016 agreement. But Plaintiffs' request for work records for Riley and Stewart does not violate the March 2016 agreement.

As for Plaintiffs' failure to include Riley and Stewart in their July 6, 2016 letter listing the opt-in plaintiffs for whom Percheron had not yet produced work records, the Court does not find this a sufficient basis to relieve Percheron from its discovery obligations. A party's failure to raise some discovery deficiencies at the same time that it raises others does not, without

more, prevent that party from subsequently pursuing the deficiencies it failed to raise.[4] Percheron will therefore produce the work records for Riley and Stewart.

### III. Conclusion

Percheron's motion to dismiss (ECF No. 214) is **DENIED** and Plaintiffs' motion to compel (ECF No. 213) is **GRANTED**. A corresponding order follows.

---

[4] Nevertheless, Percheron's arguments are well taken. Plaintiffs cannot raise new discovery deficiencies without end; at a certain point they will be presumed to have waived their right to do so. At this stage in the case the majority of written discovery has been completed and Plaintiffs have had ample opportunity to review what Percheron has produced. The Court expects no further eleventh-hour motions to compel by Plaintiffs regarding discovery issues which they could and should have addressed by now.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIC BOYINGTON, *on behalf of himself and all others similarly situated,* | ) ) ) | Case No. 3:14-cv-90 |
| | ) | JUDGE KIM R. GIBSON |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| PERCHERON FIELD SERVICES, LLC, | ) ) | |
| Defendant. | ) | |

## ORDER

**NOW**, this 12th day of April 2017, upon consideration of Plaintiffs' motion to compel (ECF No. 213) and Percheron's motion to dismiss (ECF No. 214) and for the reasons set forth in the memorandum opinion accompanying this order, it is **HEREBY ORDERED** as follows:

1. Plaintiffs' motion to compel (ECF No. 213) is **GRANTED**. <u>Within 60 days of this order,</u> Percheron will produce the work records for Riley and Stewart that are responsive to Plaintiffs' discovery requests.

2. Percheron's motion to dismiss (ECF No. 214) is **DENIED**.

BY THE COURT:

_____
KIM R. GIBSON
UNITED STATES DISTRICT JUDGE